**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| UNITED STATES OF AMERICA | 3:08-cr-068-SLG-JDR |
| Plaintiff, | |
| vs. | **RECOMMENDATION** |
| | **REGARDING** |
| GILBERTO GONZALES, | **MOTION TO VACATE** |
| | (§ 2255) |
| Defendant. | |
| | Docket 425/437 |

Gilberto Gonzales moves pursuant to 28 U.S.C. § 2255 to vacate his conviction and sentence on grounds that his trial counsel rendered ineffective assistance of counsel during the plea process and at sentencing. Docket 425. Gonzales filed an Amended § 2255 Motion by his court appointed attorney Michael R. Smith at Docket 437. A supplement to the motion was filed at Docket 438 and an addendum was filed at Docket 445. The government filed an opposition to the motion to vacate at Docket 446. Gonzales submitted a reply, Docket 451. Gonzales submitted a second addendum to his amended motion at Docket 456.

An evidentiary hearing was held on November 5, 2013 before the magistrate judge. The only testimony offered was that of Gilberto Gonzales on behalf of the movant. Upon due consideration of the testimony adduced, the record herein, and arguments of counsel the magistrate judge recommends that the Motion to Vacate be DENIED.

### Procedural History

On August 5, 2008, Gilberto Gonzales was named in Counts 1 and 6 of a six count indictment which included five other defendants. He was charged with conspiracy to distribute cocaine and methamphetamine in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846, and in Count 6 with money laundering in violation of 18 U.S.C. § 1956(a)(3)(A) & (B). Retained counsel Alan Dayan moved to withdraw and attorney Hugh Fleischer was substituted as retained counsel. On February 11, 2009 Gonzales filed a Notice of Intent to change is plea. A proposed change of plea hearing was set for February 24, 2009 before district judge John W. Sedwick.

The Plea Agreement was filed at Docket 148. Gonzales entered guilty pleas as to Counts 1 and 6 of the indictment and the court reserved acceptance of the plea agreement. Docket 154. A presentence investigation report (sealed) was filed at Docket 223. Sentencing memorandum were filed by the government and by the defendant.

On July 9, 2009 Hugh Fleischer moved to withdraw as counsel. After an ex parte hearing held before Judge Sedwick on July 15, 2009 Fleischer withdrew as attorney for Gonzales and attorney Ronald A. Offret was appointed pursuant to the Criminal Justice Act to represent Gonzales. Gonzales moved to withdraw his pleas of guilty (Docket 269) and the motion was granted at Docket 298 on October 29, 2009.

A Notice of Intent to change plea as to Gonzales was filed by Offret on January 13, 2010. A new plea agreement was filed at Docket 314 on January 22, 2010. A hearing on a proposed change of plea was held on January 25, 2010. A sealed presentence investigation report was filed at Docket 333. The parties filed their sentencing memorandum, and imposition of sentence was held on July 16, 2010. On July 19, 2010 judgment was entered against Gonzales wherein he was sentenced to 240 months and five years of supervised release and a $200 special assessment. Docket 353.

Gonzales filed a notice of appeal on July 23, 2010 at Docket 359. Ronald Offret was relieved as counsel for the defendant, and a new counsel was designated for the appeal. Gonzales appealed the 240 month sentence imposed following his guilty plea conviction. A memorandum decision of the Court of Appeals dismissed the appeal as barred by a valid appeal waiver. The mandate of the court was entered October 4, 2011. Docket 419.

**Testimony from Evidentiary Hearing**

Gilberto Gonzales was born in a rural town in Mexico.  His primary language is Spanish and he states that he cannot read or write English.  He has a prior drug conviction to which he pled guilty and received a safety valve reduction.

Gonzales testified that he pled guilty in the instant case because he is guilty of conspiracy to distribute cocaine and methamphetamine and of money laundering as charged in the indictment.  Mr. Fleischer advised him that it was best for him to cooperate with the government.  His subsequent attorney Ron Offret also made the same suggestion.

Gonzales claims that Hugh Fleischer told him to expect a sentence between 10 and 13 years.  While being represented by Mr. Offret Mr. Gonzales expected to receive a sentence between 10 and 20 years.  Attorney Offret told him "nothing was for sure."  Gonzales testified that Offret said [because he cooperated with the government] he could expect something positive.  Three days before his sentencing he and Offret looked at the "sentencing table."  Gonzales spoke with AUSA Stephen Collins and gave him information about his boss, his cars and house and information he thought would show that he was not a leader or a drug boss.

When asked for his understanding of the meaning of U.S.S.G. § 5K1.1, Gonzales stated that attorney Fleischer told him it would mean one half of the sentence could be imposed.  Gonzales testified that Offret never explained that

section to him. He testified that he felt that he had to cooperate and he "never asked for any help." Offret told him that his cooperation with the government had gone fine.

Gonzales believes he put his family at risk to co-operate but got nothing in return. His attorney was with him when he spoke to the government. Gonzales alleges that his attorneys never prepared him for his cooperation with the government. He faults his attorneys for not asking him any practice questions. He was under the impression that if he cooperated he could expect "good things."

Gonzales acknowledged in his testimony that two days before sentencing Offret asked him questions to help him prepare for the hearing. When Gonzales was asked whether Offret had gone over the presentence report with him he stated that Offret came one day with an interpreter but then left although the interpreter remained. Gonzales claims that he did not want to continue with only the interpreter while his attorney was not there to answer any questions that he might have had. Gonzales never explained what question(s) he would have asked his attorney. He testified that he did not have the interpreter read the entire presentence report to him. Offret explained to him that if he did not testify at sentencing his sentence would be longer. Gonzales thought he deserved a sentence between 10 to 20 years.

In cross-examination, Gonzales acknowledged his complaint was really against the prosecutor for not moving for a sentence reduction. During cross-examination Gonzales acknowledged that he understood that a substantial assistance departure motion is one that is brought by the government not the defendant or defense counsel. He understood that the court could not grant this departure unless the government moves for it.

When Fleischer had negotiated a plea agreement the government had agreed not to file for an increased penalty and to consider any substantial departure he may be entitled to. After viewing the presentence report Gonzales moved to withdraw his guilty pleas because he thought that Fleischer had told him to expect a lower sentence. The presentence report recommended 324 to 405 months for incarceration.

After Gonzales' initial pleas of guilty were withdrawn the government filed a motion to increase the penalty exposure. In the second plea agreement the government agreed to withdraw the motion to increase penalties and Gonzales no longer faced a mandatory minimum 20 years.

At the change of plea hearing he told the judge they wanted to contest the government's position that he was responsible for any additional drugs allegedly distributed in Hawaii. The plea agreement allowed Gonzales to argue that the drug quantity for which he was responsible was no more than 50 grams of actual

methamphetamine. Docket 380, p.16. The government was free to argue at sentencing that the drug quantity for which he was responsible was more than 50 grams of actual methamphetamine to which he had admitted.

Gonzales agreed to cooperate with the United States as set out in the addendum to his plea agreement. The government agreed to evaluate his cooperation in good faith and then in its discretion decide whether to file a motion asking the court to reduce his sentence based on the value of his cooperation. Gonzales acknowledged to the court that that was the basic agreement he had with government. Docket 380, p.16.

In the plea agreement Gonzales waived his right to appeal and collaterally attack his conviction and sentence. Gonzales acknowledged to the judge that he understood that by making these waivers he was accepting any sentence the court imposed providing that the sentence was consistent with the plea agreement. The court had found that his understanding that the conspiracy charge to which he was pleading guilty carried the maximum possible penalty under the statute of life in prison and a fine up to four million dollars.

The minimum penalty for conspiracy charge is ten years in prison if at the time of sentencing the government can prove a sufficient quantity of drugs. Based upon the amount of drugs admitted in the plea agreement, even if the United States could not prove that quantity it was sufficient to establish a minimum penalty

of five years in prison.  Gonzales was reminded by the court that money laundering carries a maximum possible penalty under the statute of 20 years in prison with a fine up to five hundred thousand dollars.

Gonzales admitted as true the statement of facts in the plea agreement which were stated by the prosecutor orally at the change of plea hearing.  Docket 380, pp. 19-20.  Thus, Gonzales admitted that between April and July 2008, he joined in an agreement with other people to distribute cocaine and methamphetamine in Alaska.  At the time he entered into the agreement, Gonzales knew that cocaine and methamphetamine were controlled substances.  Between April and July 2008 he knew that other members of the agreement had distributed one kilogram of cocaine and 50 grams of actual methamphetamine in Alaska as part of the agreement he had joined.  On July 11, 2008 Gonzales used a bank account in Las Vegas, Nevada under the name of Vincente Lopez to receive a payment of money that was represented to him by a person then working for law enforcement as having been the profits derived from the sale of methamphetamine that Gonzales had sent in July 2008 to other members of the conspiracy in Alaska.  Gonzales had the money deposited into the bank account bearing the false name of Vincente Lopez in order to conceal the true ownership and control of the profits of methamphetamine distribution.

The court ordered a written presentence report to be prepared by the probation office. Gonzales was given an opportunity to read the report or have it read to him in Spanish and to discuss it with his attorney. The defendant was told at the change of plea hearing that he and his attorney would be able to speak at the sentencing hearing and present witnesses if he chose to do so.

The court stated for the record that the plea agreement did not constitute an admission by Gonzales as to any drug quantity beyond the 50 grams of actual methamphetamine. The court added that the amount of drugs that would be considered in sentencing Gonzales was dependent upon whatever proof was presented at the time of sentencing.

Imposition of sentence took place on July 16, 2010 before the Honorable John W. Sedwick, United States District Judge. Gonzales acknowledged that the presentence report had been read to him in Spanish and that he had discussed it with his attorney (Ronald Offret). The court accepted the plea agreement and made factual findings pursuant to the factors set out in 18 U.S.C. § 3553(a).

Gonzales had denied responsibility for the 950.2 grams of powder cocaine referenced in paragraph 23, and the 616.5 grams of actual methamphetamine that was sent to Hawaii as discussed in paragraph 41. He opposed the full level enhancement for "role" in the offense described in

paragraph 74, and the inclusion of the conviction referenced in paragraph 96 in the computation of his criminal history.

Mr. Collins pointed out that Gonzales had admitted the 82 grams of methamphetamine, 26.7 grams of methamphetamine, and 335.6 grams of methamphetamine which was set out in paragraphs 48 and 54, and 59 of the presentence report. This quantity determined a base offense level of 34 not 30 as the defendant had argued. Mr. Offret accepted the mathematical correction and the court reminded Gonzales that he was still free to argue for a sentence below the guideline range.

With regard to the Hawaii methamphetamine the government called Rodney J. Russell, a special agent with ATF to testify at the sentencing hearing. The evidence included a lab report of the methamphetamine seized in Las Vegas and shipped to Hawaii attributed to Gonzales. Pursuant to that analysis the drugs weighed 893.6 grams and was 69 percent pure. Thus, the actual amount was 616.5 grams. Mr. Offret objected to the evidence based upon improper foundation because the lab technician was not present to testify. Mr. Collins pointed out that the objection was to Gonzales' responsibility for the drugs not to the laboratory reports.

Gonzales also testified at the sentencing hearing. After the evidence was closed the court heard from counsel on the issue of the defendant's objections.

With respect to the 950.2 grams of powder cocaine Offret argued that Gonzales simply knew about it but didn't have anything to do with it.  The court ruled that there was adequate support for the proposition that Gonzales was responsible for that quantity of cocaine.

With respect to the 616.5 grams of actual methamphetamine which was shipped to Honolulu from Las Vegas, after hearing from counsel, the court determined that the evidence supported the conclusion that Gonzales was one and the same person as "Toro" who was involved in the shipment to Honolulu.  The court rejected Gonzales' self-serving testimony to the contrary.

With respect to the defendant's role in the offense, Offret argued that Gonzales was nothing more than a pawn, that he was "conned" into his participation and once involved could not get out.  He argued that Gonzales got into the matter late and was not the organizer.  The court ruled that Gonzales was the person to whom most of the co-conspirators looked, and that he was responsible for supervising Mata-Lanares.  The court found that the evidence did not support the proposition that he was the organizer or leader of the criminal activity such as to constitute an aggravating role calling for a 4 level increase rather than 3 levels under Guideline §3B1.1(b).

The parties were heard to argue the correct criminal history category for the defendant.  The court ruled that Category III was appropriate and rejected the

request by the defendant to reduce it to a Category II. Based on the findings of fact of the court, the Guideline range was a Level 38 and a Criminal History Category of III. Thus, the advisory guideline range was from 292 to 365 months of incarceration.

Based on the fact that the sentencing guidelines were no longer mandatory Mr. Offret argued for consideration to be given based upon Gonzales' cooperation with the government. Although the government did not argue for a §5K1.1 reduction, Mr. Offret pointed out the government did believe him when he tried to give them information. He argued the circumstances and compared the sentencing ranges of the other five defendants, and recommended a range of 120 to 150 months as appropriate. The government argued that the main factors were the quantity of drugs involved and their purity as well as the enhancement for the defendant's role in the offense. AUSA Collins pointed out that other defendants had a Criminal History Category of I. Collins argued that the defendant's involvement in the methamphetamine trafficking was that of a major participant not a simple participant. He pointed out that following Gonzales' first conviction he was transferred to Mexico to complete his term of imprisonment and then reentered the United States and continued to become involved in drug trafficking. The prosecutor recommended 360 months as a minimum to satisfy all the criteria contained in § 3553(a) consistent with the recommended sentencing guideline.

Gonzales then addressed the court in his allocution. In passing judgment the court acknowledged that the defendant's prior conviction had not deterred him. The court stated that he was more responsible for the activities of people distributing the drugs than he had been in the earlier crime. Because of his history the court found a relatively lengthy sentence necessary, namely one of at least 10 years in duration. The court was mindful of the need to avoid unwarranted sentencing disparities and imposed a term of 240 months on Count 1, and 240 months on Count 6, such terms to run concurrently.

The record demonstrates that Gonzales was provided knowledge of advisory guideline calculations before sentencing. The record contains sufficient evidence to support the district court's finding that the government has sustained its burden of proof for the contested amount of drugs and that Gonzales was subject to the role enhancement.

## Discussion

### Standard for Ineffective Assistance of Counsel Claims

Ineffective assistance violates the Sixth Amendment right to the assistance of counsel. Claims are subject to analysis under the two-prong test established in Strickland v. Washington, 466 U.S. 668 (1984). A claim of ineffective assistance of counsel on appeal is also evaluated under the same two-part test enumerated in Strickland. *See* United States v. Birtle, 792 F.2d 846 (9th Cir. 1986).

The <u>Strickland</u> analysis requires that the criminal defendant show not only that his attorney's representation was deficient but also that the attorney's representation prejudiced his cause. *Id.* at 693. The defendant bears the burden of demonstrating that his attorney's performance was "so deficient that it fell below an objective standard of reasonableness." <u>Silva v. Woodford</u>, 279 F.3d 825, 836 (9th Cir. 2002). "Judicial scrutiny of a counsel's performance must be highly deferential," and "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." <u>Strickland</u>, 466 U.S. at 689. A defendant must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*; *see also* <u>Murtishaw v. Woodford</u>, 255 F.3d 926, 939 (9th Cir. 2001)(Defendant "bears the heavy burden of proving that counsel's assistance was neither reasonable nor the result of sound trial strategy.").

To establish prejudice the defendant must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." <u>Strickland</u>, at 694. A reasonable probability is one "sufficient to undermine confidence in the outcome." *Id.* "It is not enough for [a defendant] to show that the errors had some conceivable effect on the outcome of the proceedings. Virtually every act or omission of counsel would meet

that test, and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceedings." *Id.* at 693.

A court need not determine whether counsel's performance was deficient before examining the prejudice suggested by the defendant as a result of the alleged deficiencies. "The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness of counsel claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result." Strickland at 697.

The presentence report identifies the additional drugs for which Gonzales was found responsible under the sentencing guidelines. Gonzales withdrew his guilty pleas under the original plea agreement negotiated by attorney Hugh Fleischer. Under that agreement, the defendant would still have had to overcome the allegations through evidence as to the additional quantities of drugs identified in that report. The evidence does not sustain the defendant's argument that attorney Offret's performance led to the government filing an enhanced statutory penalty against him based on his prior felony conviction. The enhanced penalty notice was withdrawn by the government prior to sentencing.

Gonzales was given a fair opportunity to qualify for the §851.1 reduction. However, the government exercising its discretion declined to find his cooperation sufficient to merit the motion for reduction. Gonzales can point to no action by his attorney that caused him to fail to measure up to the government's expectation for the reduction. The defendant has offered no evidence to identify any omission or commission by his attorney or any prejudice to his attorney's handling of his case to merit habeas relief.

Iaea v. Sunn, 800 F.2d 861 (9th Cir. 1986) holds that the mere inaccurate prediction of the outcome of the criminal prosecution standing alone does not constitute ineffective assistance of counsel. In that case defense counsel had made a serious error in informing Iaea that he was subject to Hawaii's minimum sentencing statute only if he pled guilty. Counsel's advice about the likelihood of Iaea receiving an extended or light sentence was practically non existent, and the advice that he might receive probation was faulty. There is no such serious error by defense counsel identified in the case before this court. Gonzales has presented no evidence that his attorney failed to supply him with necessary and accurate information. Gonzales has not shown that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *See* Hill v. Lockhard, 474 U.S. 52, 59 (1985). The Strickland v.

<u>Washington</u> test for evaluating claims of ineffective assistance of counsel applies to guilty plea challenges based on ineffective assistance of counsel. <u>Hill</u>, at 52.

Any assertion by Gonzales that he did not understand the nature and consequence of his plea is defeated by the district judge's findings that his plea was knowing and that he understood the charges against him and the possible punishment he faced. These findings are fully supported by the record. A defendant is entitled only to reasonable effective assistance of counsel, not perfect representation. <u>Murtishaw v. Woodford</u>, 255 F.3d 926 (9th Cir. 2001).

The ultimate question in his motion to vacate is whether counsel's representation fell below an objective standard of reasonableness. The defendant bears the heavy burden of proving that counsel's assistance was neither reasonable nor the result of sound trial strategy. *See* <u>Strickland</u>, 466 U.S. at 689. To demonstrate prejudice he has the burden of proving that there is a reasonable probability that but for counsel's errors, the result of the proceedings would have been different, or in this case he would not have pled guilty. <u>Strickland</u>, 466 U.S. at 694. Here, it has not been shown that defense counsel's advice to plead guilty was deficient. Nor has Gonzales shown that his counsel's advise to plead guilty prejudiced him.

The sentencing judge makes the ultimate decision as to the sentence to be imposed. The plea bargain obtained by defense counsel allowed Gonzales an

opportunity to object to the additional drug quantities, to cooperate with the government in hopes of obtaining a §5K1.1 motion to reduce, and an opportunity to argue for mitigation based upon his role in the offenses and criminal history. The defendant's dissatisfaction with the sentence he received does not constitute ineffective assistance of counsel.

Gonzales does not argue that he was innocent of the criminal charges; he argues that his attorney should have done more to ensure that he received a lower sentence than imposed. He has not identified what his attorney should have done in this regard.

A §5K1.1 motion for downward departure based substantial assistance is one brought by the government not the defense counsel or the defendant. The court cannot grant this departure unless the government moves for it. Assuming that attorney Fleischer told Gonzales to expect a lower sentence, the defendant was not prejudiced because he was allowed to withdraw his pleas of guilty after the initial presentence report was prepared. That report recommended 324 to 405 months. The defendant received a substantial lower sentence namely, 240 months. The court imposed less imprisonment than the presentence report recommended.

The defendant's testimony that attorney Offret did not prepare him for sentencing is belied by the opportunities he was given to speak on his behalf and be heard with respect to the aspects of sentencing that he disagreed with. Gonzales

claims his attorney should have done more to prepare him for obtaining the §5K1.1 but he does not identify what that assistance would have been. He argues that his attorney did not prepare him to answer questions but he has not identified any particular questions in that regard. There is no evidence that he could have answered any particular question differently or that he had information to provide to the government that he failed to provide because of his attorney's representation.

The defendant's statement that attorney Offret did not go over the presentence report with him is belied by his statements to the court at sentencing to the contrary. There is no evidence to support the defendant's mere allegation that his attorney failed to adequately prepare him for his sentencing hearing.

As the government points out the defendant's "cooperation" does not equate to "substantial assistance" for the safety valve benefit. Compare Womack v. Del Papa, 497 F.3d 998 (9th Cir. 2007) holding that defense counsel's advise was not deficient even though the defendant was sentenced to eight terms of life since the defendant was clearly informed of the potential for life sentences; his written plea agreement unambiguously informed him that the state retained the right to argue for the sentence of life. At the plea hearing the judge informed the defendant he could be sentenced to life. The defendant stated he understood the possible sentence. Womack claimed that he was reluctant to plead guilty and alleged that his attorney's advice to plead guilty as it was the best chance of his receiving 30 to 40 years was

a gross mischaracterization of the likely outcome. The court found that his claim that he was reluctant to plead guilty was wholly unsupported by the record and clearly discredited by the district court. The court observed that there was no evidence in the record that would elevate Womack's attorney's prediction to the level of Iaea's counsel's patently erroneous advice referring to Iaea v. Sunn, supra. The instant case is more like that of Womack than Iaea.

In Iaea the court held that Iaea's counsel's performance was deficient because his errors were numerous and serious. 800 F.2d at 864. Iaea's counsel seriously erred in informing him that he could escape Hawaii's minimum sentencing statute only if he pled guilty because the relevant version of Hawaii's minimum statute did not apply to him. Id. at 864-65. Furthermore, the counsel's advice that the likelihood of Iaea's receiving an extended or life sentence was practically non existent and that he might received probation was faulty. Id. at 865. The record shows that Iaea's counsel was well aware of the fact that the prosecutor would request extended sentencing. Id. Thus, the court found gross mischaracterization of the likely outcome present combined with the erroneous advice of the possible effects of going to trial fell below the level of competence required of a defense attorney.

See also Doganiere v. United States, 914 F.2d 165 (9th Cir. 1990) (defendant was not prejudiced and thus not deprived of effective assistance of

counsel even if the defense attorney's performance was deficient in failing to inform him of parole consequences of a guilty plea). Doganiere was sentenced to 15 years imprisonment, whereas the defense attorney had inaccurately predicted a sentence of not more than 12 years.

## Conclusion

Gonzales did not receive ineffective assistance of counsel. His motion to vacate lacks merit. The Motion to Vacate his conviction and sentence should be DENIED. IT IS SO RECOMMENDED.


DATED this 22nd day of November, 2013, at Anchorage, Alaska.


*/s/ John D. Roberts*
JOHN D. ROBERTS
United States Magistrate Judge

Pursuant to D.Ak.L.M.R. 6(a), a party seeking to object to this proposed finding and recommendation shall file written objections with the Clerk of Court no later than **NOON 12/06/2013**. Failure to object to a magistrate judge's findings of fact may be treated as a procedural default and waiver of the right to contest those findings on appeal. McCall v. Andrus, 628 F.2d 1185, 1187-1189 (9th Cir.), cert. denied, 450 U.S. 996 (1981). The Ninth Circuit concludes that a district court is not required to consider evidence introduced for the first time in a party's objection to a magistrate judge's recommendation United States v. Howell, 231 F.3d 615 (9th Cir. 2000). Objections and responses shall not exceed **five (5) pages** in length, and

shall not merely reargue positions presented in motion papers.  Rather, objections and responses shall specifically designate the findings or recommendations objected to, the basis of the objection, and the points and authorities in support.  Response(s) to the objections shall be filed on or before **NOON 12/13/2013**.   The parties shall otherwise comply with provisions of D.Ak.L.M.R. 6(a).

Reports and recommendations are not appealable orders.  Any notice of appeal pursuant to Fed.R.App.P. 4(a)(1) should not be filed until entry of the district court's judgment.  <u>See</u> <u>Hilliard v. Kincheloe</u>, 796 F.2d 308 (9th Cir. 1986).